UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES J. PRIBBLE, JR. )<br>By Next of Friend, )<br>CHARLES J. PRIBBLE, SR., )<br>  )<br>  Plaintiff, )<br>  ) Cause No. 3:06-CV-0552<br>  v. )<br>  )<br>TOWN OF WINONA LAKE, )<br>PAUL M. HEATON, )<br>UNKNOWN PRIVATE SECURITY )<br>OFFICER, JOHN DOE, )<br>  )<br>  Defendants. ) | |

## OPINION AND ORDER

According to Plaintiff Charles J. Pribble, Jr., in the early morning hours of May 15, 2005, Officer Paul Heaton was driving around a neighborhood of Winona Lake looking for an underage drinking party that was rumored to be occurring. When he saw a bunch of cars parked outside the Pribble home and saw through a large window that young people were drinking inside, he believed he had found what he was looking for. He knocked on the door to investigate, but when the wily person who answered the door asked if Heaton had a warrant, he replied that he didn't need one. Heaton then forcibly entered the house and arrested everyone inside, including Pribble. This left Pribble's father unhappy and prompted him to file a lawsuit in state court against Officer Heaton, the town of Winona Lake, and an unknown private security officer who allegedly accompanied Heaton during the raid. Defendants then removed the case to this Court. Pribble alleges violations of his Fourth, Fifth, and Sixth Amendment rights and a common law claim of false arrest and imprisonment.

Before the Court are Plaintiff's motion for remand and Heaton and Winona Lake's (the

"Government Defendants'") motion to dismiss.  For the reasons that follow, Plaintiff's motion for remand is DENIED, and Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

Plaintiff alleges that on or around May 15, 2005, Officer Paul Heaton heard through the grapevine of Winona Lake and Warsaw police officers that an underage drinking party was going to occur in Stonecamp, a neighborhood in the leafy town of Winona Lake, Indiana. (Compl. ¶ 3.)  In the early morning hours of May 15, he went looking for this party on his patrol. (*Id*.)  When he failed to locate the party at Stonecamp, Officer Heaton proceeded to Stonehenge, another area of Winona Lake.  (*Id*. ¶ 4.)

At approximately 3:00 AM, Officer Heaton saw cars parked in front of the home of Mr. and Mrs. Charles J. Pribble, Sr., Plaintiff's parents. (*Id*. ¶ 6, 9.)  Heaton parked his patrol car on the street.  (*Id*. ¶ 6.)  Heaton stated that, from the vantage point of his car, he was able to see through the picture window of the home that an underage drinking party was occurring.  (*Id*. ¶¶ 6, 8.)  Though he lacked a search warrant, Heaton turned on his emergency lights, got out of his car and approached the residence. (*Id*. ¶ 9.)  At the time of Heaton's arrival, none of the Pribbles' neighbors had complained about noise or any disturbance related to the gathering.  (*Id*. ¶ 7.)

When Heaton knocked on the door, it was answered by Matt Anderson, who asked Heaton if he had a search warrant.  (*Id*. ¶ 10.)  Stating that he didn't need a warrant, Heaton forcibly entered the premises and arrested all persons present, including Plaintiff.  (*Id*. ¶ 11-12.) Heaton was joined by an unnamed private security officer, who participated in the arrests.  (*Id*. ¶¶ 13-15.)  The two then transported Plaintiff to Kosciusko County Jail, where he was detained. (*Id*. ¶ 17.)

Plaintiff filed a lawsuit in the Circuit Court of Kosciusko County, alleging that the individual defendants, Heaton and the John Doe security officer, lacked probable cause to enter the Pribble residence and arrest Plaintiff. (*Id*. ¶ 17) Plaintiff alleges violations of the Fourth, Fifth, and Sixth Amendments of the Constitution and their Indiana counterparts, and also raises a state law claim of false arrest and imprisonment. (*Id*. ¶ 18.) Defendants Heaton and Winona Lake then removed the state court action to this court, invoking federal question jurisdiction, and moved to dismiss all claims against them. [Docket Nos. 2, 7.] Plaintiff, in turn, moved to remand the action to state court. [Docket No. 14-3.]

## II.  DISCUSSION

### A.  Motion for Remand

Under 28 U.S.C. § 1441(a), defendants may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." When a case is removed under federal question jurisdiction, the federal court may exercise supplemental jurisdiction over state law claims under the same terms as if the action was originally brought in federal court – that is, when the state law claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164 (1997) (Section 1367 "applies with equal force to cases removed to federal court as to cases initially filed there").

In a single paragraph in his response to the motion dismiss, Plaintiff argues that his common law false arrest and false imprisonment claims "are within the jurisdiction of the State court not the Federal court." (Resp. at 5.) Although he does not appear to contest this Court's ability to exercise supplemental jurisdiction over the state law claims, he asserts that "justice

3

would long be served" by remand – whatever that means.

It is plain that we have supplemental jurisdiction over the state law claims alleged here because they are factually related to the federal claims.  But this is not even worth discussing because, as a threshold matter, Plaintiff's motion to remand was filed more than four months after the case was removed, and is therefore untimely.  28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction *must* be made within 30 days after the filing of the notice of removal under section 1446(a)." (emphasis added)).  Therefore, the Court need not address the merits of Plaintiff's motion, and remand is denied.

**B.  Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss, a district court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Moranski v. General Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).  Dismissal is only appropriate if it appears beyond doubt from a reading of the complaint that the plaintiff can prove no set of facts that would entitle him to relief.  *Hernandez v. City of Goshen, Ind.,* 324 F.3d 535, 537 (7th Cir. 2003).

Federal complaints plead claims rather than facts.  *Kolupa v. Roselle Park Dist*., 438 F.3d 713, 714 (7th Cir. 2006).  Pleadings in federal court need not allege facts corresponding to each element of a statute.  *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005).  "It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits . . . that will let the defendant investigate.  A full narrative is unnecessary." *Kolupa*, 438 F.3d at 714.  "Any district judge (for that matter, any defendant) tempted to write 'this complaint is deficient

4

because it does not contain . . . ' should stop and think: What rule of law requires a complaint to contain that allegation?" *Doe*, 429 F.3d at 708 (emphasis omitted).  A plaintiff receives the benefit of "any fact that could be established later consistent with the complaint's allegations." *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006).

### 1. Fifth and Sixth Amendment Claims

Plaintiff alleges that Defendants violated his Fifth and Sixth Amendment rights.  (Compl. ¶ 18.)  However, Plaintiff does not specify which clauses of those Amendments Defendants allegedly violated.  With respect to the Fifth Amendment, it is clear that Plaintiff has not raised claims relating to double jeopardy, self-incrimination, grand jury rights, or a taking of his property by eminent domain.  U.S. Const. amend. V.  The only other way to construe the claim is as a due process claim.  But the due process clause of the Fifth Amendment only applies to federal officials; a due process claim against state officials would fall under the Fourteenth Amendment.  *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see also Johnson v. Carroll*, 694 F. Supp. 500, 504 (N.D. Ill. 1988).  The Court does not foreclose the possibility that Plaintiff may be able to make out a viable due process claim under the Fourteenth Amendment, but this complaint does not state such a claim.  Rather, the factual allegations in the complaint fit fully within the Fourth Amendment, as discussed below.  Therefore, Plaintiff's Fifth Amendment claim is dismissed without prejudice.  Plaintiff may amend his complaint within 30 days to state a due process claim if he can assert one in good faith.

The Sixth Amendment deals with a person's right to counsel, right to a speedy trial, right to compulsory process, and right to a jury trial.  U.S. Const. amend. VI.  None of the allegations in the complaint implicate any of these rights.  Therefore, Plaintiff's Sixth Amendment claim is dismissed without prejudice as well, and he will be given 30 days to amend the complaint to

properly allege a Sixth Amendment violation.

### 2. Fourth Amendment Claim Against Officer Heaton

Defendants maintain that Plaintiff's claim of unreasonable search and seizure under the Fourth Amendment should be dismissed because Officer Heaton had probable cause to enter the home and make the arrest. The question of probable cause is typically "a proper issue for a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993). Defendants' own cases (most of which are Indiana state court cases, which do not control our interpretation of the federal Constitution) reflect this principle. *See Earles v. Perkins*, 788 N.E.2d 1260, 1264 (Ind. App. 2003) (reviewing grant of summary judgment; "The determination of probable cause is a mixed question of law and fact."); *Miller v. City of Anderson*, 77 N.E.2d 1100 (Ind. App. 2002) (affirming summary judgment; plaintiff's case must fail "if *the record as a whole* reflects probable cause for the arrest" (emphasis added)). Plaintiff's complaint alleges that "Heaton *advises* he *allegedly* observed an underage drinking party occurring by looking into the house from the road" (Compl. ¶ 8 (emphasis added)), but the Court does not interpret that allegation to mean that Plaintiff admits Heaton's version of events or concedes that Heaton had probable cause.

More importantly, Defendants incorrectly assert that Heaton only needed probable cause in order to justify his entry into a private residence. That is plainly not the standard. In the absence of a warrant, a police officer needs both probable cause and the presence of exigent circumstances, such as a risk of physical harm or the imminent destruction of evidence, that make it reasonable for the officer to enter even though he does not have a warrant. *United States v. Karo*, 468 U.S. 705, 715 (1984) ("Searches and seizures inside a home without are

presumptively unreasonable absent exigent circumstances."); *Payton v. New York*, 445 U.S. 573, 576, 590 (1980) (absent exigent circumstances, police officers may not enter an individual's home without consent in order to make a warrantless arrest for a felony, even if they have probable cause); *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) ("[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.").

Taking the complaint on its face, Officer Heaton entered the house without a warrant because he saw some young people drinking inside, not because he perceived any particular danger or risk inside. *Cf. Brigham City v. Stuart*, 126 S.Ct. 1943, 1944 (2006) (exigent circumstances were present where officers, who had responded to a 3:00 a.m. call about loud party, heard an altercation as they approached the house, saw juveniles drinking in backyard, and upon looking through screen door and windows, saw an altercation in which a juvenile punched an adult, causing him to spit blood). Once inside, he began arresting people, including Plaintiff. The complaint does not indicate what Heaton saw when he entered the home, so it is unclear whether Heaton had probable cause to arrest Plaintiff once he was inside the house. The existence of both probable cause and exigent circumstances are issues that require the development of facts. *See Jacobs v. City of Chicago*, 215 F.3d 758, 770 (7th Cir. 2000) (dismissal was inappropriate where allegations in complaint gave no indication that exigent circumstances existed for warrantless search). For now, it is enough that Plaintiff has plainly stated a claim for relief under the Fourth Amendment.

Defendants insist, however, that Officer Heaton is entitled to qualified immunity for his actions. State officials occupying positions with discretionary authority and who are acting

7

under color of state law may be immune from claims that he violated a plaintiff's constitutional rights.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).  But the pleading stage of a case is not the appropriate time to raise qualified immunity. As the Seventh Circuit has noted, "a complaint is usually not dismissed under Rule 12(b)(6) on qualified immunity grounds."  *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).  This is because qualified immunity is a defense.  "Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate:  '[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.'"  *Id*. at 651-52, quoting *Jacobs*, 215 F.3d at 765 n.3.

To evaluate a defense of qualified immunity, the Court must first determine whether Plaintiff has stated a violation of his constitutional rights, and then determine whether those rights were clearly established at the time that the violation allegedly occurred.  *Jacobs*, 215 F.3d at 766.  The first step has been satisfied; as discussed above, we have already determined that Plaintiff has stated a claim for violation of his Fourth Amendment rights.  In order to satisfy the second step, the plaintiff must show that, in light of pre-existing law, a reasonable defendant would have known that his conduct was unlawful.  *Anderson v. Creighton*, 433 U.S. 635, 60 (1987).  It has been clearly established since the Supreme Court decided *Coolidge v. New Hampshire* in 1971 or *Payton v. New York* in 1980, that "a search and seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'"  *Coolidge*, 403 U.S. 443, 474-75 (1971).  Because we don't know at this point what the circumstances were on the night in question, dismissal on qualified immunity grounds is plainly inappropriate.

### 3. Fourth Amendment Claim Against Winona Lake and Heaton in His Official Capacity

Defendants are correct, however, in their assertion that Plaintiff has not stated a Fourth Amendment claim against the town of Winona Lake. A municipality may not be held vicariously liable for its employee's actions. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Although there is no heightened pleading standard for a municipal liability claim under § 1983, *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 183 (1993), a plaintiff still must "set forth sufficient allegations to place the court and defendants on notice of the gravamen of the complaint." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2002).

The Seventh Circuit has concluded that, in order to put a municipality on notice that a plaintiff alleges more than mere *respondeat superior* liability, there must at least be some allegation of misconduct on the part of the municipality itself:

> To allege that a municipality has violated an individual's civil rights under . . . § 1983, [a plaintiff must] allege that (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of the law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000), citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995); *Latuszkin*, 250 F.3d at 504 (same); *see also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("To state a claim against a municipal or local entity, 'a complaint must allege that a constitutional deprivation was caused by an official policy or

9

custom.'" (quoting *Arlotta v. Bradley Center*, 349 F.3d 517, 521-22 (7th Cir. 2003))).

Here, Plaintiff has not alleged that Heaton's actions were the result of the town's official policy or established custom, or that he was otherwise injured by town policymakers. Plaintiff has not made any allegation against the town *at all*, let alone any allegation connecting the town with Heaton's actions. On the face of the complaint, the only connection between the town and the allegedly unlawful search is that Heaton was a Winona Lake police officer. Because Winona Lake cannot be held liable solely for employing Heaton, it really has no basis for knowing the basis of the municipal liability claim, and it is not required to try to infer it from the existing allegations.

Accordingly, Plaintiff is free to amend his complaint to properly allege that Heaton was either 1) acting pursuant to Winona Lake policy, 2) pursuant to a widespread practice or 3) that Plaintiff's injury was caused by a person with final policymaking authority. Therefore, although Plaintiff has not met the minimum pleading standards to make out a claim of municipal liability, should he wish to pursue such a claim, the hurdle for doing is a simple one to clear.

Claims against government officers in their official capacities are actually claims against the governmental entity for which the officers work. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Thus, Plaintiff's Fourth Amendment claim against Officer Heaton in his official capacity essentially duplicates the claim against Winona Lake, and so it fails for the same reason. The Fourth Amendment claims against Winona Lake, and against Heaton in his official capacity, are dismissed without prejudice. Plaintiff is given 30 days to amend his complaint against Winona Lake and against Heaton in his official capacity, as described above.

10

### 4. False Arrest and Imprisonment

Plaintiff alleges that Defendants' actions also constituted false arrest and imprisonment under state law.  To state a claim of false arrest, Plaintiff merely had to allege that Officer Heaton had no probable cause to arrest him, or that he acted in bad faith.  *Garrett v. City of Bloomington*, 478 N.E.2d 89, 94 (Ind. Ct. App. 1985).  The complaint alleges that the entry into the Pribble residence and the arrest of Plaintiff "was done without probable cause."  (Compl. ¶ 16.)  Therefore, the complaint states a claim against Officer Heaton.

As stated above, nothing in the complaint alleges misconduct on the part of Winona Lake.  However, unlike a § 1983 claim, a false arrest claim under state law can stand against a governmental entity on the basis of respondeat superior.  *See Minks v. Pina*, 709 N.E.2d 379, 382 (Ind. Ct. App. 1999) ("Governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the [Indiana Tort Claims Act applies.").  Plaintiff's complaint can be fairly construed as alleging a claim against the town of Winona Lake on the basis of vicarious liability for the actions of Officer Heaton.  In their motion to dismiss, neither Heaton nor Winona Lake asserted immunity under the Indiana Tort Claims Act. Therefore, the state law false arrest and imprisonment claims move forward against both Heaton and town of Winona Lake.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand [Docket No. 14-3] is DENIED. The Town of Winona Lake and Officer Paul Heaton's Motion to Dismiss [Docket No. 7] is GRANTED IN PART and DENIED IN PART.  Plaintiff's Fifth and Sixth Amendment claims are dismissed without prejudice as to all Defendants.  Plaintiff's Fourth Amendment claim is dismissed without prejudice as to Defendant Winona Lake.  Defendants' motion is denied with

respect to Plaintiff's Fourth Amendment claims against Officer Heaton, and with respect to Plaintiff's false arrest claims against both Government Defendants.  As stated above, Plaintiff is granted leave to amend his complaint within 30 days.

**SO ORDERED.**

ENTERED: April 17, 2007

s/ Philip P. Simon<br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT